NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANTHONY MAHONEY,<br><br>　　　　　　Petitioner,<br>　　v.<br><br>FREDERICK R. BOSTEL, Chief Probation Officer of the Union County Vicinage, and STUART RABNER, Attorney General of New Jersey,<br><br>　　　　　　Respondents. | CIVIL ACTION NO. 06-3316 (JLL)<br><br>**OPINION** |

**LINARES**, District Judge.

This matter is before the Court on Petitioner Anthony Mahoney's ("Petitioner" or "Mahoney") Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (the "Petition"). For the reasons discussed herein, the petition for habeas corpus relief is DENIED.

**I.   Background**[1]

　　**A.   Statement of Facts**

Petitioner Anthony Mahoney began practicing law in 1971. For the bulk of his twenty-eight-year career, he practiced in partnership with his brother at Mahoney & Mahoney, working primarily on litigation matters, but also performing some transactional work. The incident for which Mahoney stood trial arose out of his attorney-client relationship with Clark and Barbara Ferry. In spring 1998, after the Ferrys' son, Clark Jr., had been struck and killed by a car in

---

　　[1] The Court looks to the record in the state court proceedings in crafting this factual and procedural history.

February of that year and the insurance carrier for the driver of the offending vehicle had contacted the Ferrys, they asked Petitioner to represent them with respect to the accident.[2]

In December 1998, Mahoney sent Barbara Ferry a retainer agreement which, after some negotiation, she signed as *administratrix ad prosequendum* of Clark Jr.'s estate.  On January 4, 1999, the Ferrys met with Mahoney at the Ocean County Surrogate's Office where the Ferrys applied for appointment as administrators *ad prosequendum* of their son's estate.  Approximately eight days later, the Ferrys received a letter from the offending driver's insurance carrier notifying them that the case had settled for the sum of $75,000.00.  The letter specified that the check had been (i) made out to "Clark Ferry & Barbara Ferry, as Administrators Ad Prosequendum for [sic] Estate of Clark Ferry, Jr. and Mahoney & Mahoney, as attorneys" and (ii) mailed to Mahoney.[3]  In March 1999, Mrs. Ferry contacted Petitioner to inquire as to when their portion of the settlement would be disbursed.  Mahoney indicated that he could not yet release the funds as he was awaiting certain tax releases.  The Ferrys contacted Petitioner on two other occasions regarding the release of funds to no avail.

When trying to determine the tax issues preventing the release of their settlement money in October 1999, the Ferrys reviewed the January 1999 letter and realized that the check had been made out to three payees.  Upon obtaining a copy of the front and back of the check, Mrs. Ferry recognized that there were three signatures on the check – two of which purported to be hers and Mr. Ferry's, but were indeed not, and one on behalf of Mahoney & Mahoney.  Mrs. Ferry

---

[2] The Ferrys had retained Mahoney on other matters in the past.

[3] At trial, there was conflicting testimony over when the Ferrys actually read and discussed the contents of the letter.

contacted Petitioner's office and was informed that the money had finally been released and would reach her by month's end. The above circumstances had provoked the Ferrys' suspicion to the point that they contacted the Westfield Police Department and the Union County Prosecutor. After a short investigation which included a taped conversation between Mrs. Ferry and Petitioner, the police obtained a warrant, conducted a search of Petitioner's law offices on December 21, 1999, and seized the Ferry file and Petitioner's firm's bank records.

Thereafter, Petitioner was charged with, <u>inter alia</u>, third-degree theft, third-degree misapplication of entrusted property, and two counts of third-degree forgery. During trial on said charges, the judge precluded Petitioner's eight character witnesses from testifying about Petitioner's "practice and reputation as an attorney." The trial court only allowed these witnesses to testify as to Petitioner's "reputation in the community as to honesty, trustworthiness, integrity, and diligence." The judge also limited Petitioner's ability to present evidence of the Ferrys' infidelity as well as the possible illegitimacy of the Ferrys' son.

### B.   Procedural History

At trial in the Superior Court, Law Division, Union County, Petitioner was convicted of (1) third-degree theft by failure to make required disposition of property in violation of N.J.S.A. 2C:20-9; (2) third-degree misapplication of entrusted property as against N.J.S.A. 2C:21-15; and (3) two counts of third-degree forgery in violation of N.J.S.A. 2C:21-1(a)(2). The trial judge sentenced Mahoney to two concurrent three-year terms of probation on the condition that he perform five hundred hours of community service and remit a $5,000.00 fine and the requisite statutory penalties. In the course of sentencing, Petitioner applied to the prosecutor for entrance into the Pre-Trial Intervention (PTI) program. The prosecutor denied Mahoney's application,

3

stating that under PTI Guideline 3(i), defendant had not overcome the presumption against admitting individuals charged with breach of the public trust into said program.

Petitioner appealed his conviction to the Appellate Division, which affirmed the trial court's determinations in part, but ultimately reversed Mahoney's convictions. State v. Mahoney, 376 N.J. Super. 63, 72-73 (App. Div. 2005). The Appellate Division found that the trial court had improperly (1) excluded testimony by Petitioner's character witnesses about Mahoney's character traits as an attorney, (2) submitted the full text of a rule regarding an attorney's bookkeeping responsibilities related to the practice of law to the jury without instructions how to consider the rule, and (3) allowed statements by the prosecutor during summation that deprived Petitioner of his right to a fair trial. Id. However, it affirmed the trial court's denial of Mahoney's PTI application. Id. at 73. As the Appellate Court found a new trial necessary on the character witness grounds, it did not "consider the balance of defendant's arguments," including the illegitimacy and infidelity issue. See id.

After the Appellate Division's determination, the State requested certification to the New Jersey Supreme Court on April 18, 2005 and Petitioner cross-petitioned for certification the same day. The Supreme Court granted the State's petition and denied Mahoney's. See State v. Mahoney, 185 N.J. 35 (2005). In its opinion, the Supreme Court affirmed the Appellate Court in part and reversed in part. State v. Mahoney, 188 N.J. 359, 368-69 (2006). The Court upheld the Appellate Court's findings as to the trial court's error in submitting the ethical rule to the jury without proper instructions, but reversed the lower court's findings, holding that (a) the trial court's decision to exclude testimony from Petitioner's character witnesses regarding specific acts or instances and Mahoney's ability as a lawyer was proper and (b) the prosecutor's

comments during her closing argument did not deprive Petitioner of a right to a fair trial. Id. at 362. The Supreme Court remanded the case to the Law Division for reinstatement of Petitioner's forgery convictions and for a new trial on the theft counts and the misapplication of entrusted property. Id. at 363.

On July 19, 2006, Mahoney filed the petition for habeas relief under 28 U.S.C. § 2254. In September, counsel for Petitioner informed the Court that Petitioner had filed a *pro se* petition for writ of certiorari to the United States Supreme Court. Accordingly, the Court stayed this action pending a determination on the petition by the Supreme Court. The U.S. Supreme Court denied the writ on October 30, 2006, Mahoney v. New Jersey, 127 S. Ct. 507 (2006), and the Court lifted the stay thereafter.

## II.   Discussion

Pursuant to 28 U.S.C. § 2254(a), a district court shall consider an application for habeas corpus relief filed by a person "in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." See Lackawanna County District Attorney v. Coss, 532 U.S. 394 (2001). Petitioner asserts that his rights pursuant to the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution were violated. Specifically, Petitioner claims that:

(1) the trial court improperly denied him admission into the PTI Program;

(2) the trial court improperly prevented him from introducing evidence about Barbara Ferry's infidelity and possible illegitimate children as part of his defense that the rift between the Ferrys caused the delay in the disbursement of funds; and

(3) the trial court improperly limited testimony from his character witnesses, precluding him from using his professional character as a defense.


(Pet. at 3, 6, 8.)

Section 2254(d) sets forth the standard for granting or denying a writ of habeas corpus. The statute reads as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court discussed the application of section 2254(d)(1) in Williams v. Taylor, 529 U.S. 362 (2000). In Williams, the Court analyzed subsection one as two clauses: the "contrary to" clause and the "unreasonable application" clause. See Williams, 529 U.S. at 405-08; see also Fischetti v. Johnson, 384 F.3d 140, 147-48 (3d Cir. 2001) (analyzing the requirements of section 2254(d)(1)). The Court held that state court decisions are "contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." Williams, 529 U.S. at 405-06; Fischetti, 384 F.3d at 147-48. With respect to the "unreasonable application" clause, the Court held that a federal court may "grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts" of the applicant's case. Williams, 529 U.S. at

413.  The state court's application of clearly established federal law must be objectively unreasonable.  Id. at 409; Fischetti, 384 F.3d at 148.

In determining whether to grant habeas relief under section 2254(d)(2), a federal court must apply a presumption of correctness to factual determinations made by the state court, which may only be overcome by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); Duncan v. Morton, 256 F.3d 189, 196 (3d Cir. 2001).  Federal habeas courts ordinarily refrain from revisiting credibility determinations made by state courts.  See Sanna v. Dipaolo, 265 F.3d 1, 10 (1st Cir. 2001).

### A. Exhaustion Requirements

A district court may not grant a writ of habeas corpus under section 2254 unless the petitioner has exhausted state court remedies.  See 28 U.S.C. § 2254(b)(1)(A); Rhines v. Weber, 544 U.S. 269, 273-74 (2005); Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997) (finding that "Supreme Court precedent and the [Antiterrorism and Effective Death Penalty Act ("AEDPA")] mandate that prior to determining the merits of [a] petition, [a court] must consider whether [petitioner] is required to present [his or her] unexhausted claims to the [state's] courts").  A petitioner's failure to exhaust may be excused if (i) there is no available state court remedy or (ii) the remedies available cannot effectively protect the petitioner's rights.  See 28 U.S.C. § 2254(b)(1)(B).

To exhaust one's state court remedies, a petitioner must show that he "fairly presented" his claims to the state courts by "invoking one complete round of the State's established appellate review process."  Carpenter v. Vaughn, 296 F.3d 138, 146 (3d Cir. 2002) (quoting O'Sullivan v.

Boerckel, 526 U.S. 838, 844-45 (1999)).  A petitioner must exhaust state remedies by presenting his federal constitutional claims to each level of the state courts empowered to hear those claims, either on direct appeal or in collateral post-conviction proceedings.  28 U.S.C. 2254(c); Tucker v. Northern State Prison, No. 07-4970, 2008 WL 108805, at *4 (D.N.J. Jan. 9, 2008) (Linares, J.) (explaining that the exhaustion requirement demands that a petitioner "present each federal claim to the Superior Court of New Jersey, Law and Appellate Divisions, and to the New Jersey Supreme Court" (citing Toulson v. Beyer, 987 F.2d 984, 987-89 (3d Cir. 1993)).  The exhaustion requirement mandates that the petitioner put the state courts on notice regarding the federal nature of his claims.  See Baldwin v. Reese, 541 U.S. 27, 32 (2004).  The petitioner bears the burden of showing that the claims heard by the state courts were the "substantial equivalent" of the arguments presented in the federal habeas petition – in essence, that the legal theory and factual predicate are the same.  Picard v. Connor, 404 U.S. 270, 275, 277 (1971); McCandless v. Vaughn, 172 F.3d 255, 261 (3d Cir. 1999) ("To 'fairly present' a claim, a petitioner must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted.").  Once a petitioner's federal claims have been fairly presented to the state's highest court, the exhaustion requirement is satisfied.  Castille v. Peoples, 489 U.S. 346, 350 (1989); Picard, 404 U.S. at 275.  While a petition for writ of habeas corpus may not be granted if the Petitioner has failed to exhaust his remedies in state court, a petition may be denied on the merits notwithstanding the petitioner's failure to exhaust his state court remedies.  See 28 U.S.C. § 2254(b)(2); Lambert v. Blackwell, 387 F.3d 210, 260 n.42 (3d Cir. 2004); Lewis v. Pinchak, 348 F.3d 355, 357 (3d Cir. 2003).

In this case, the Petition is mixed, i.e., it includes exhausted and unexhausted claims.

Specifically, Petitioner failed to present the federal nature of the claims in Grounds Two and Three at the state court level. (Ra1 at 34-43, 59-64; Ra8 at 18-19; ra16 29-40.) Petitioner asserts that the trial court's (1) exclusion of evidence on Mrs. Ferry's alleged infidelity and illegitimacy "constituted a denial of due process" in Ground Two and (2) limitation of his character witnesses' testimony regarding his skill and ability as an attorney violated his due process and equal protection rights by preventing him from putting on a valid defense. (Pet. at 6, 8.) While Petitioner appealed said trial court rulings in the state court proceedings, he appealed them as errors under the State evidentiary rules, not as a violation of his Constitutional rights. See State v. Mahoney, 188 N.J. at 369-73; State v. Mahoney, 376 N.J. Super. at 71; Ra1 34-5; Ra16 32-33. Petitioner did not present the "substantial equivalent" of the legal theory underlying Grounds Two or Three of the Petition in the state court proceedings and thus has failed to exhaust these claims.

    **B.**    **Stay and Abeyance**

The exhaustion doctrine is one of "total" exhaustion. That is, "a district court must dismiss habeas petitions containing both unexhausted and exhausted claims [('mixed' petitions)]." Rose v. Lundy, 455 U.S. 509, 522 (1982). In Lundy, the Supreme Court laid out the procedure by which federal courts should effectuate the "total exhaustion" requirement: the reviewing court should dismiss mixed petitions without prejudice and allow petitioners to return to state court to present the unexhausted claims to that court in the first instance. Lundy, 455 U.S. at 518-19. At the time Lundy was decided, there was no statute of limitations on the filing of federal habeas petitions. The enactment in 1996 of a one-year limitations period for § 2254

habeas petitions under AEDPA[4] "has altered the context in which the choice of mechanisms for handling mixed petitions is to be made." Crews v. Horn, 360 F.3d 146, 151 (3d Cir. 2004) (internal quotation omitted).  Because of the one-year limitations period, dismissal of a timely-filed mixed petition may forever bar a petitioner from returning to federal court.  "Staying a habeas petition pending exhaustion of state remedies is a permissible and effective way to avoid barring from federal court a petitioner who timely files a mixed petition." Crews, 360 F.3d at 151.  Indeed, the Third Circuit has held that "when an outright dismissal could jeopardize the timeliness of a collateral attack, a stay is the only appropriate course of action." Crews, 360 F.3d at 154.

In Rhines v. Weber, 544 U.S. 269 (2005), the Supreme Court limited the stay-and-abeyance rule announced in Crews, holding that "stay and abeyance should be available only in limited circumstances."  544 U.S. at 277.  A district court may grant a stay and abeyance upon determining that "there was good cause for the petitioner's failure to exhaust his claims first in state court."  Id.  "[I]f a petitioner presents a district court with a mixed petition and the court determines that stay and abeyance is inappropriate, the court should allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief."  Id. at 278.

Even where stay and abeyance is appropriate, the district court's discretion in structuring the stay is limited by the timeliness concerns reflected in the one-year statute of limitations.  "Thus, district courts should place reasonable time limits on a petitioner's trip to state court and

---

[4] See 28 U.S.C. § 2244(d).

back." Id. See also Crews, 360 F.3d at 154 ("If a habeas petition is stayed, the petitioner should be given a reasonable interval, normally 30 days, to file his application for state post-conviction relief, and another reasonable interval after the denial of that relief to return to federal court. If a petitioner fails to meet either time-limit, the stay should be vacated nunc pro tunc.") (citations omitted). Furthermore, "even if a petitioner had good cause for th[e] failure [to exhaust], the district court would abuse its discretion if it were to grant [petitioner] a stay when his unexhausted claims are plainly meritless." Rhines, 544 U.S. at 277. District courts should deny a mixed petition on the merits under section 2254(b)(2) only "if it is perfectly clear that the [petitioner] does not raise even a colorable federal claim." Lambert, 134 F.3d at 515 (quoting Granberry v. Greer, 481 U.S. 129, 135 (1987)). Consequently, the Court examines the merits of Grounds Two and Three in Part II.C.2, infra.

In the case at bar, the one-year limitations period has expired. The Court need not consider whether there was "good cause" for Petitioner's failure to exhaust Grounds Two and Three of the Petition, as both claims fail on their merits. The Court examines Ground One as well below to make a full disposition as to the Petition.

### C. Petitioner's Claims are Without Merit

#### 1. Ground One

In Ground One of his Petition, Mahoney challenges the denial of his admission into the PTI Program as a denial of his equal protection rights. In New Jersey, the PTI Program is purely a creation of state law, formally adopted by the Supreme Court of New Jersey. See N.J.S.A. 2C:43-12, 2C:43-13; NJ. Ct. R. 3:28; see also Davis v. Grusemeyer, 996 F.2d 617, 620 n.2 (3d

Cir. 1993), abrogated on other grounds, Rolo v. City Invest. Co. Liquidating Trust, 155 F.3d 644 (3d Cir. 1998).  There is no indication here that the decision of the state courts with respect to the PTI Program are anything but proper.  Petitioner does not point the Court to any caselaw suggesting that the state courts' determinations on this issue are contrary to, or are an unreasonable application of, federal law as decided by the United States Supreme Court, or are based on unreasonable factual determinations.  See 28 U.S.C. § 2254(d)(1)-(2).  Petitioner only cites New Jersey state court cases to buttress his position, none of which discuss the grant or denial of entry into the PTI Program as pertaining to a petitioner's equal protection rights.  According deference to the correctness of the state court rulings as the Court must pursuant to 28 U.S.C. § 2254(e)(1), recognizing that PTI eligibility determinations are the province of state law, and finding that Petitioner has not asserted any ground on which to grant Petitioner's request for habeas relief, the Court denies Ground One of the Petition.

  **2.**  **Grounds Two and Three**

Although Petitioner has failed to exhaust Grounds Two and Three of his Petition, the Court will consider the merits of these claims prior to determining the necessity of a stay and abeyance of the case.  See Rhines, 544 U.S. at 277.  These challenges pertain to the state trial court's application of state evidentiary rules to the exclusion or limitation of evidence.  (Ra50 at 10-11, 29.)  With respect to Ground Two, Petitioner, relying on Crane v. Kentucky, 476 U.S. 683, 690 (1986), states that he was "denied . . . a meaningful opportunity to present a complete defense" under the Sixth Amendment to the United States Constitution.  (Pet. Br. at 10.)[5]  In

---

[5] In his Petition, Mahoney merely states that the state trial court's evidentiary rulings "constituted a denial of due process."  (Pet. at 6.)  He does not cite any Constitutional or Supreme

12

Ground Three of the Petition, Mahoney challenges the state court's limitation on character evidence testimony as denying him due process and equal protection. (Id. at 8.)

As stated above, federal courts must afford the states deference in their determinations regarding evidence and procedure. See Homes v. South Carolina, 547 U.S. 319, 324 (2006) ("'State and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials.'"); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (noting that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); Crane, 476 U.S. at 690 (stating "we have never questioned the power of the States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability, even if the defendant would prefer to see that evidence admitted."). Generally, challenges to rulings on the admissibility of evidence are not cognizable under habeas review. See Keller v. Larkin, 251 F.3d 408, 416 n.2 (3d Cir. 2001) ("A federal habeas court, however, cannot decide whether the evidence in question was properly allowed under the state law of evidence."). Even "a state court's misapplication of its own law does not generally raise a constitutional claim. The federal courts have no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." Smith v. Horn, 120 F.3d 400, 414 (3d Cir. 1997) (citations omitted), cert. denied, 522 U.S. 1109 (1998).

Evidentiary rulings rise to the level of a cognizable constitutional claim when the petitioner "was denied fundamental fairness at trial" such that his due process rights were

---

Court law in the Petition itself.

violated. Pilgrim v. Hendricks, No. 03-2089, 2005 WL 2897467, at *7 (D.N.J. Nov. 1, 2005) (Linares, J.). The habeas court must ask "whether the claimed error of law is a fundamental defect which inherently results in a complete miscarriage of justice or in an omission inconsistent with the rudimentary demands of fair procedure." Hutchins v. Hundley, 1991 WL 167036, at *4 (D.N.J. Aug. 22, 1991) (citing United States v. DeLuca, 889 F.2d 503, 506 (3d Cir. 1989), cert. denied, 496 U.S. 939 (1990)). The reviewing court should not necessarily overturn a conviction on these grounds unless it "may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." Delaware v. Van Arsdall, 475 U.S. 673, 681 (1986).

The "latitude" accorded to state courts in establishing rules of evidence that exclude certain types of evidence in criminal trials is curtailed by the Sixth Amendment's Compulsory Process and Confrontation Clauses which "guarantees criminal defendants a meaningful opportunity to present a complete defense." Homes, 547 U.S. at 324. Such an assertion is, as stated, subject to harmless error review. See, e.g., Crane, 476 U.S. 683; Van Arsdall, 475 U.S. at 680-84; Savage v. Dist. Attorney of County of Phila., 116 Fed. Appx. 332 (3d Cir. 2004) (unpubl.). To establish a Sixth Amendment violation, a habeas petitioner must present more than an argument that "some relevant evidence was excluded from his trial." Gov't of the Virgin Islands v. Mills, 956 F.2d 443, 446 (3d Cir. 1992). A petitioner must establish: (1) a deprivation of the opportunity to present favorable evidence; (2) the excluded testimony or evidence would have been material and favorable to his defense; and (3) the deprivation was arbitrary or disproportionate to any legitimate evidentiary or procedural purpose. Id. (citing Rock v. Arkansas, 483 U.S. 44, 56 (1987)).

In addition to relying on Crane in support of his argument to present a meaningful

14

defense, Petitioner cites Chambers v. Mississippi, 410 U.S. 284 (1973), for the proposition that a trial court may not apply state court evidentiary rules "mechanistically to defeat the ends of justice," if said rule conflicts with a defendant's right to present witnesses on his behalf. (Pet. Br. at 21.) In Savage, the Third Circuit reviewed the petitioner's invocation of both these cases on a habeas petition challenging a state court's evidentiary ruling, limiting evidence. The Third Circuit explained, "A review of [Chambers and Crane] . . . reveals that the Supreme Court was concerned about the draconian application of state evidentiary rules in contravention of the basic constitutional guarantees to procedural fairness, something which is entirely absent from this case." Savage, 116 Fed. Appx. at 339. The same holds true here.

Petitioner does not demonstrate that the trial court's rulings on both evidentiary issues were "arbitrary or disproportionate to any legitimate evidentiary or procedural purpose." See Mills, 956 F.2d at 446. As to the infidelity and illegitimacy issue, Petitioner merely states such evidence bore on Mrs. Ferry's credibility, but "it also established that [there] existed a highly charged emotional basis for the Ferrys['] involvement in their dispute over the settlement funds and the delay that the dispute caused in making a 'disposition.'" (Pet. Br. at 9.) Petitioner then recites nearly seven (7) pages of evidence to this Court (see id. at 10-18), but does not demonstrate that the same would have been material or favorable to his defense or how he was deprived of his ability to present favorable evidence. The trial judge limited the evidence Petitioner could present as to the Ferrys' infidelities and illegitimacies. (See Ra50 at 5:16-7:11.) While he allowed some evidence of the alleged illegitimacy, he did not admit evidence as to Mrs. Ferry's alleged infidelities (id. at 29:7-29:18), and ultimately concluded that the infidelity evidence should be excluded because it was "tangential, prejudicial, time consuming, and of very

15

limited probative value." (Id. at 29:20-29:22.)[6]

With respect to the character witness testimony, the trial court allow Petitioner to offer character witnesses as to his honesty, integrity, and trustworthiness. Mahoney, 188 N.J. at 370. However, the trial court curtailed Petitioner's ability to present character witnesses to testify as to Petitioner's skill and ability as an attorney, reasoning that whether Petitioner's previous clients were satisfied with his performance as an attorney, whether they would retain or recommend him today, and whether he handled a trust account for him "are not character traits, they are not pertinent, and they are specific instances of conduct and not opinion or reputation testimony." Id. The judge precluded reference or testimony as to these specific instances under New Jersey Rule of Evidence 405. See id. While Petitioner asserts that the trial judge improperly interpreted New Jersey Rules of Evidence 404 and 405 (Pet. Br. at 22), the New Jersey Supreme Court found that the trial judge properly excluded testimony from character witnesses as to evidence regarding specific instances of conduct as it "was not relevant to the discrete issues in the case," see id. at 373. This Court agrees. On both issues, the record reflects that the trial judge reasoned his limitations and exclusions on the evidentiary issues challenged here. The trial judge's rulings here consider evidence that (i) is "only marginally relevant" and (ii) poses a risk of "harassment, prejudice, or confusion of the issues," and this Court must accord them deference. See Savage,

---

[6] Only when relevant probative evidence is "greatly outweighed" by the prejudice to the accused does the balancing of probative value against prejudicial effect result in error of constitutional dimensions. Bisaccia v. Attorney Gen. of State of New Jersey, 623 F.2d 307, 313 (3d Cir. 1980); see Bacon v. Ricci, No. 06-4910, 2008 WL 2354554, at *18 (D.N.J. June 3, 2008) (citing United States ex rel. Mertz v. State of New Jersey, 423 F.2d 537, 539-40 (3d Cir. 1970)). The trial judge concluded that the evidence itself was prejudicial and Petitioner does not point the Court to the "great weight" of the prejudice that ensued from said limitation.

116 Fed. Appx. at 339 (citing Van Arsdall, 475 U.S. at 679; Crane, 476 U.S. at 689).  Petitioner's claims amount to an assertion that "some relevant evidence was excluded from his trial."  As such, Petitioner has not shown, as required by 28 U.S.C. § 2254(d), that the rulings of the state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  Accordingly, the Court denies Petitioner habeas relief on Grounds Two and Three of the Petition.

**III.    Conclusion**

For the aforementioned reasons, Mahoney's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 is denied.  The Court further finds that no certificate of appealability will issue because Petitioner has not made a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c)(2).  An appropriate Order accompanies this Opinion.


Date:   June 30, 2008                                              /s/ Jose L. Linares
                                                                   United States District Judge